IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JAMES HOWARD,⁣ )
and VANESSA HOWARD, )
⁣ )
⁣ Plaintiffs, )⁣ TC-MD 160377R
⁣ )
v. )
⁣ )
DEPARTMENT OF REVENUE, )
State of Oregon, )
⁣ )
⁣ Defendant. )⁣ **FINAL DECISION**[1]

Plaintiffs appealed Defendant's Notice of Deficiency, dated November 13, 2015, for the

2012, 2013, and 2014 tax years. A trial was held on June 24, 2017, in the Oregon Tax Court,

Salem, Oregon. George Burgott appeared on behalf of Plaintiffs. James Howard (Howard)

testified on behalf of Plaintiffs. James Wallace appeared on behalf of Defendant. Vanessa

Howard[2] and Cheol-won Charles Randle testified on behalf of Defendant. Plaintiffs' Exhibits 2,

3, 4, 5 (pages 5-7, 8-12, 15), 6 (except pages 3, 4, 13, 14, 19, 27, 29, 30, 31, 32, 34, 39, 40, 52,

69, 75, 83, 87, 90, and 94), 8 to 13, and 15 to 17 were admitted into evidence. Defendant's

Exhibits A to Q were admitted into evidence. The parties were given until October 20, 2017, to

submit post-trial briefs which were timely received by the court.

## I. STATEMENT OF FACTS

Howard testified that he began farming about age five when his parents started their farm.

Howard began by feeding cattle from a bucket and he testified that his father gave him "one

animal" as payment for his services. After high school Howard worked several years in

---

[1] This Final Decision incorporates without change the court's Decision, entered February 26, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Ms. Howard was called as an adverse witness.

construction, a few months of cable laying, as a diesel mechanic, and for a diving company. Howard helped his father haying or with the cattle every year except one. Howard's father "maintained" the herd, while also working in law enforcement until he was laid off in 2007 or 2008. Howard testified that he took over the farming business from his father in 2008. That same year he started fishing as a crew-hand and eventually became captain of a boat. Howard's gross income from fishing was $85,320 in 2012; $83,673 in 2013; and $121,741 in 2014. (Def's Ex C at 4.) Howard testified his spouse worked for a bank and also as a county employee during the tax years in issue.

In 2008, several cows on the farm died from "black leg" disease. He estimated he lost between 9 and 12 animals. Howard testified that in 2009, his father sent Plaintiffs' cattle to auction and took the proceeds without permission, leaving them with only 5 animals. He testified that, although he felt what his father did was wrong, he did not report the loss to the authorities. He testified that by 2012 he had 8 females and a bull, and by the end of 2014 he had from 12 to 15 animals. During the tax years at issue, Plaintiffs did not show any cattle as an asset, did not depreciate the animals, identified on their tax returns their farm business was "hay," and did not declare a loss for the 2009 incident. Howard testified that reliance on advice from his tax preparers at H&R Block was the reason for his failure to put cattle-related information on his returns prior to the years at issue. During the tax years at issue, Plaintiffs engaged a CPA firm to prepare and file their returns. Those returns also did not list cattle as their business. Plaintiffs did not create a written business plan for the farm until after they were audited for the tax years at issue.

Howard testified that he made money from harvesting hay from his parents' property and other property owners he knew. He would often receive payment in cash and would put that

money in his truck, his office, or in his gun safe. He would use cash to pay many of his expenses, and other than some receipts, he did not keep written records of the payments. Howard testified that he maintained separate checking and credit card accounts for the farm business.

Howard testified that he needed to purchase equipment to increase his hay production because his father's equipment was unreliable. From 2008 through 2014, Plaintiffs claimed $102,731 in capital purchases for the farm. (Ptfs' Ex 2 at 5.) The top purchases were: $16,500 for a Linkbelt Excavator, $11,500 for a Champ forklift, $9,000 for a Cat HD-11, $6,800 for a bailer, and $5,957 for fencing. Howard testified that he bought the excavator to clear ground from weeds for hay, grazing, and to build fences. In addition, Howard testified that his mother purchased a Kubota Tractor on credit for Plaintiffs because they were in the process of buying a house. He testified that Plaintiffs made the monthly payments for the tractor. He testified he was considering purchasing a round bailer for approximately $40,000 so he could bale wet hay and get a second cutting from the fields.

Howard testified he kept track of his mileage, days farming, and days fishing on a calendar. (See, Ptfs' Ex 13, 17.) His 2013 calendar has a handwritten mileage of 169,000 miles for his vehicle on January 2, 2013. No further mileage amounts were noted for the year. The calendar has periodic notations for "boat" or "f" for farming. His 2014 calendar does not detail miles driven for work.

Howard testified that after 2011 he almost doubled hay production due to using shrimp skins as fertilizer. (*See* Ptfs' Ex 2 at 11.) He estimates he harvests 269 tons of hay per year with a selling price of $40 per ton. Plaintiffs' 2012 federal tax return shows their principal farm activity is "hay." (Ptfs' Ex 4 at 5.) Their schedule F shows total sales of $1,640 with expenses

of $51,753. *Id*. Plaintiffs presented an adding machine tape, with numbers only, to show their net farm income for the year. (Ptfs' Ex 5 at 5.) Deposits into the Howard Farms business account for 2012 totaled $14,097.60. (Ptfs' Ex 8.)

Plaintiffs' 2013 tax return shows $3,987 in farm sales and $75,259 in expenses. (Ptfs' Ex 11 at 5.) Plaintiffs 2014 tax return shows $3,768 in farm income with expenses of $71,275. (Ptfs' Ex 15 at 6.) The only evidence of Plaintiffs' farm expenses for those years are adding machine tapes without supporting receipts. (Ptfs' Ex 16 at 1-3.) Howard's calendars for the 2013 and 2014 tax years do not detail mileage. (Ptfs' Ex 13, 17.) No credit card information was presented as evidence for any of the tax years at issue.

## II.  ANALYSIS

The issue in this case is whether Plaintiffs' farm was a business, for which deductions are allowed under Internal Revenue Code (IRC) section 162, or an activity not engaged in for profit, under IRC section 183.

A.    *Burden of Proof*

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, wherever possible. ORS 316.007.[3] Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income is a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84,

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

112 S Ct 1039, 117 L Ed 2d 226 (1992).

B.      *Deductibility of Farm Expenses*

Under IRC section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" The code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" except as provided in IRC section 183. Treas Reg § 1.183-2(a). "[D]eductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation." *Id*. If the activity is not engaged in for profit, expenses may be deducted under IRC section 183 only to the extent of any profits. *Gallo v. Dept. of Rev*., TC-MD 011022F, WL 21675927 at *3 (July 8, 2003).

> "The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. In determining whether such an objective exists, it may be sufficient that there is a small chance of making a large profit. * * * In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent."

Treas Reg § 1.183-2(a); *see Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987).

"In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination." Treas Reg § 1.183-2(b). The nonexhaustive list of factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional

profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *Id.*

      1.      *Manner in which taxpayer carries on activity*

"The fact that the taxpayer carries on the activity in a businesslike manner * * * may indicate that the activity is engaged in for profit." Treas Reg § 1.183-2(b)(1). Under that factor, the court considers "(1) whether the taxpayer maintained complete and accurate books and records for the activity, (2) whether the taxpayer conducted the activity in a manner substantially similar to those of comparable activities that were profitable, and (3) whether the taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability." *Giles v. Comm'r*, 89 TCM (CCH) 770 (2005), 2005 WL 375462 at *9 (US Tax Ct) (citing *Engdahl v. Comm'r*, 72 TC 659, 666-67 (1979); Treas Reg § 1.183-2(b)(1)). "A written business plan is not required if the 'business plan was evidenced by * * * actions.' " *Betts v. Comm'r (Betts)*, 100 TCM (CCH) 67 (2010), 2010 WL 2990300 at *6 (US Tax Ct) (quoting *Phillips v. Comm'r*, 73 TCM (CCH) 2296 (1997), 1997 WL 105015 at *6 (US Tax Ct).

Plaintiffs did not have complete and accurate books and records for farm income and expenses for the tax years in issue. Howard testified that he had a regular procedure to keep track of his farm expenses; he put receipts in an envelope and filed them by month. Despite that purported organized approach, Howard's testimony clearly demonstrated that his farm expense documentation was in disarray. During the trial, Howard needed a break to go over his 2012 expense receipts and narrow down which receipts were personal in nature and those which were business-related. (*See* Ptfs' Ex. 6.) Even then, the receipts presented as exhibits do not match income or expenses. For example, deposits into the farm bank account totaled $14,097.60 in

2014. (Ptfs' Ex 8,) That is 8.5 times what was reported as gross income, excluding transfers from other accounts. (Ptfs' Ex 5 at 5.)

Howard testified that he kept cash receipts in his truck, in the office, or in his gun safe, and then regularly used cash to make purchases. Plaintiffs offered no records of cash receipts and very few records for cash payments. Receipts submitted for 2012 are over $13,000. Proof of farm expenses for 2013 and 2014 are merely adding machine tapes with no other information. (*See*, e.g. Ptfs' Ex 16.) The court is unable to correlate those tapes to the expenses claimed as deductions. Plaintiffs did not keep a log of transportation miles, despite seeking a deduction for that category. Further, although substantiation of business expenses under IRC section 162 was not specifically addressed by the parties, nevertheless, it should be noted that many of the purported business expenses appear to be more like personal expenses. Howard did not provide persuasive testimony on the business necessity of costs associated with his dog, cat or horse. Nor was the court persuaded that varmint control was an adequate explanation for thousands of dollars in firearms and ammunition.

Plaintiffs did not have a written business plan until after Defendant's audit. Even then, the plan did not explain how large expenditures for haying had any effect on producing a profit when profits appear to be from selling cattle. Plaintiffs' actions over the years did not obviate the need for a business plan.

The issue as to whether Plaintiffs' business is substantially similar to other farms is nuanced. On its surface, Howard's testimony detailed a combination of hay farming and cattle rearing that is in conformity with the type of testimony typically seen in IRC section 183 farm cases. However, upon scrutiny, the expenses appear at odds with Plaintiffs' explanation of how they plan to make a profit. Plaintiffs' expenses and depreciable assets focused on hay

production. Capital expenditures were $102,731 as of 2014, however, their cumulative income to that point was only $16,627. Howard testified that the price of hay was $40 per ton and a one-year harvest was about 269 tons. He also testified that his fertilizing efforts had already nearly doubled hay production. At that rate, it would take over a decade to recoup Plaintiffs' actual costs. Additionally, Howard testified he intended to purchase a round bailer at $40,000. That would significantly delay Plaintiffs' profitability even assuming the equipment did not need replacement. Howard testified that profitability would depend on sales of cattle, but he has no record of any sales. Plaintiffs never explained why the bulk of their costs and investments went to the production of a crop. No testimony was presented to coordinate any need to increase hay production as a prerequisite to raise more cattle. Plaintiffs produced no financial forecasts or evidence that their farm was substantially similar to others in the community. None of Plaintiffs' tax records showed ownership of cattle or any sales or casualty losses of the animals.

Plaintiffs insinuated that it was their accountant's fault for failing to have adequate records to back up their deductions. (Ptfs' Post-trial Br at 4-5.) In the alternative, Plaintiffs argue that Defendant failed to offer persuasive evidence to impeach Plaintiffs' evidence. (*Id.* at 5-6.) The court disagrees with both propositions. Plaintiffs' tax filings followed a consistent pattern even after they changed tax preparers. It is their responsibility, and burden of proof, in this case to provide accurate information and review their returns before filing them. Despite Howard's generally credible testimony about his profit motives, the lack of books and records fails to support Plaintiffs' contention. Plaintiffs did not present evidence on controlling costs or expenses other than implementing use of waste from his fishing operations being used to fertilize the hay fields. In short, the court agrees with Defendant's assessment that "Plaintiffs created none of the types of business records that businesses-for-profits routinely create, maintain, and

analyze for the purpose of making a profit, e.g., financial records or financial analyses upon which decisions may be made that are designed to make profits." (Def's Post-Trial Br at 5.) That factor weighs against Plaintiffs.

### 2. *Expertise of taxpayers or their advisors*

"The main inquiry is whether [Plaintiffs] received advice from the experts as to the accepted principles and economics of profitably running a business * * *." *Betts*, 2010 WL 2990300 at *8 (citations omitted).

Howard testified that he has been haying and raising cattle since he was young, which gave him a level of expertise. On the other hand, absent from the testimony was any expertise in the business side of farming. Howard's father had a regular career outside of farming, and so does Howard. Cutting and bailing hay and raising cattle is not the same as running a profitable farm. Howard analogized to his success in captaining a fishing boat. However, the fishing boat was not really his business, as he was admittedly an employee. Howard did not demonstrate that he had expertise at running a farm business or that he sought out experts to assist him in making the cattle breeding operations profitable. That factor is, at best, neutral.

### 3. *Time and effort expended*

Howard presented evidence that he spent 525 hours a year to feed cattle, 100 hours for fence repair, 40 hours for spraying, and 50 hours for fertilizer application. Additionally, Howard presented evidence of at least 650 hours per year of equipment time for hay production and 120 hours for hay storage. The amount of time spent farming was significant. That factor weighs in favor of Plaintiffs.

/ / /

/ / /

4.      *Expectation that assets may increase in value*

The only asset that Plaintiffs could assert might increase in value was their cattle, as their tools and equipment were depreciating. However, no evidence was presented of actual ownership of the cattle and scant evidence was presented to show how the cattle would appreciate. That factor weights against Plaintiffs.

5.      *Success in carrying on similar or dissimilar activities*

"[A] taxpayer's previous success in similar activities may show that the taxpayer has a profit objective even though the current activity is presently unprofitable. A taxpayer's success in other, unrelated activities also may indicate a profit objective." *Storey v. Comm'r,* 103 TCM (CCH) 1631 (2012), 2012 WL 1409273 at *11 (US Tax Ct) (citations omitted). No evidence was presented that Plaintiffs have been successful in similar farm activities. Howard is a successful fisherman/boat captain and his spouse is a banker and county employee. Success in those occupations is not similar to farming. Howard's testimony of success at being a fishing captain did not include factors including crop maximization, animal husbandry, or purchasing assets which will lead to increased business growth. That factor weighs against Plaintiffs.

6.      *History of income or losses*

> "[W]here losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, * * * may be indicative that the activity is not being engaged in for profit. If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, * * * such losses would not be an indication that the activity is not engaged in for profit."

Treas Reg § 1.183-2(b)(6).

The evidence shows a seven-year period of steady farm losses with generally increasing rather than decreasing expenses. Howard argues that he expensed several unexpected losses: he lost a bull in 2007; suffered cattle losses due to "black leg" in 2008; and in 2009 he lost many

head of cattle when his father sold them and kept the proceeds. Although Howard's testimony about his father's conduct appeared sincere, his tax filings do not show that the cattle were ever part of Plaintiffs' assets or that that he sought credit for a catastrophic loss.

Howard testified that it only takes a few years for cows to mature for breeding. The record does not show a significant effort to build the herd. Howard's business plan speculation of a "turnaround" in 2015 was not supported by the evidence. Howard's testimony that he wanted to grow the herd would explain why he did not sell any females, but it does not explain why no males were sold through 2015. Although Howard did have minimal increase in gross receipts, he did not show a trend toward profitability by reducing expenses, but, rather, continued to incur additional expense related to hay production.

Plaintiffs' losses in excess of $260,000 over a seven-year period paint a very clear picture. The 2015 tax year was not at issue, however, testimony showed the trend of losses continued. Plaintiffs' gross receipts for farming for that year were only $2,204, compared to $50,857 in farm expenses. (Def's Ex N at 8.) "While a person may start out with a bona fide expectation of profit, even if it is unreasonable, there is a time when, in light of the recurring losses, the bona fides of that expectation must cease." *Prieto v. Comm'r*, 82 TCM (CCH) 716 (2001), 2001 WL 1196201 at * 8 (US Tax Ct). That factor weighs against Plaintiffs.

7.      *Amount of occasional profits earned*

"An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit. However, substantial profit, though only occasional, would

/ / /

/ / /

generally be indicative that an activity is engaged in for profit, where the investment or losses are comparatively small." Treas Reg § 1.183-2(b)(7).

Plaintiffs have never shown a profit from farming from 2008 through 2015. Plaintiffs' losses were not small and their assertion of eventual profitability was not persuasive. Howard's testimony hinted that Plaintiffs were not in any hurry to make a profit to offset expenses despite a long history of losses. That factor weighs against Plaintiffs.

8.      *Financial status of the taxpayers*

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Treas Reg § 1.1832(b)(8).

Plaintiffs earned significant income from their respective jobs; him as a fisherman and her as a personal banker and county employee. Howard's fishing income increased significantly from 2008 through 2014. It is interesting to note that his farm expenses nearly matched his fishing income and Plaintiffs paid significantly less tax as a result of their farm losses. If it were not for that significant other income, Plaintiffs would have been unable to sustain their farm activity. That factor weighs against Plaintiffs.

9.      *Elements of personal pleasure or recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Treas Reg § 1.183-2(b)(9). Howard testified that work on the farm was hard while also admitting it had an element of personal pleasure. In response to Defendant's request for information, Howard stated: "When I was five my family bought our first heifers … this was

when I realized how much I enjoyed [farm] life, and this is where my start began with farming."

(Def's Ex D at 2.) Howard's testimony of family heritage and a sense of accomplishment appear

to be a significant motivation for the continuation of the farm activity, instead of a more

contemporaneous profit motive. His further testimony also indicated he saw a limit to his

physical ability to keep fishing over time and wanted to transition to farming. Howard's intent

appears to defer profitability until he retires from fishing. Although there is nothing wrong with

Howard's lifestyle choice, Plaintiffs are not permitted under the tax code to deduct the excess

losses against current income without a present intent to make a profit. That factor weighs

against Plaintiffs.

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs did not operate their farm

with the requisite intent to make a profit during the 2012, 2013, and 2014 tax years. Now,

therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' farm deductions for the 2012,

2013, and 2014 tax years should be disallowed to the extent their losses exceed their net farm

income.

Dated this ___ day of March 2018.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR. Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*
*This document was signed by Magistrate Richard Davis and entered on March 16, 2018.*